**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: November 27, 2017
Date Decided: December 4, 2017

John L. Reed, Esquire
Ethan H. Townsend, Esquire
DLA Piper LLP
1201 North Market Street, Suite 2100
Wilmington, DE 19801

Rudolf Koch, Esquire
Matthew W. Murphy, Esquire
Matthew D. Perri, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

Bradley R. Aronstam, Esquire
Nicholas D. Mozal, Esquire
100 S. West Street, Suite 400
Wilmington, DE 19801

Richard D. Heins, Esquire
Peter H. Kyle, Esquire
Ashby & Geddes
500 Delaware Avenue
Wilmington, DE 19801

John A. Sensing, Esquire
Jaclyn Levy, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
Wilmington, DE 19801

Peter B. Ladig, Esquire
Meghan A. Adams, Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801

Re: *LVI Group Investments, LLC v. NCM Group Holdings, LLC et al.*,
Civil Action No. 12067-VCG

Dear Counsel:

This case involves dueling fraud claims between LVI Group Investments, LLC and NCM Group Holdings, LLC. In April 2014, LVI and NCM merged into NorthStar Group Holdings. The competing fraud claims involve alleged misrepresentations each party made to the other in connection with the merger.

On August 29, 2016, about six months after this action began, I entered a protective order, agreed to and provided by the parties, governing the use of discovery material produced in this litigation. Paragraph nine of the protective order provided that such discovery material "shall be used solely for purposes of this litigation and shall not be used for any other purpose, including, . . . any other litigation or proceedings."[1] Discovery began, and NCM received documents purportedly showing that four individuals—Brian Simmons, Robert Hogan, John Leonard, and Gregory DiCarlo—participated in the fraud LVI allegedly perpetrated against NCM. Simmons and Hogan reside in Illinois; Leonard and DiCarlo work or reside in New York. NCM wanted to sue these four individuals, but it decided that bringing suit in Delaware would be too risky, because the supposed wrongdoers would (perhaps successfully) raise defenses based on personal jurisdiction and the applicable statute of limitations. NCM could avoid litigating those defenses if it sued the four individuals in the states they live or work in. But that option was foreclosed by the protective order, because NCM needed to use the materials it obtained in discovery in this case in order to adequately plead fraud against the four individuals[2] in courts outside of Delaware. Such, at least, is what NCM represented to this Court in urging modification of the protective order. NCM now says that it

---

[1] Protective Order ¶ 9.
[2] In its application for certification, NCM states that it also seeks to sue another alleged fraudster, CHS, in Illinois.

has sued Leonard and DiCarlo in New York without relying on any of the information it obtained during discovery in this case.

Faced with the dilemma described above—which NCM alleges continues with respect Simmons and Hogan—NCM moved to amend the protective order. On November 1, 2017, I issued a bench ruling denying NCM's motion. I also granted NorthStar's motion to enter an order governing the production of privileged material, which order contained a limitation on the use of privileged material that is substantively identical to that found in the protective order. NCM now seeks certification of an interlocutory appeal from those rulings. For the reasons that follow, I deny certification.

Supreme Court Rule 42 establishes that "interlocutory appeal is an extraordinary remedy, which 'should be exceptional, not routine, because [such appeals] disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources.'"[3] This Court will not certify interlocutory appeal of a decision unless it "decides a substantial issue of material importance that merits appellate review before a final judgment."[4] In deciding whether to grant certification, "the trial court should identify whether and why the likely benefits of interlocutory review outweigh the probable costs, such that

---

[3] *Chrome Sys., Inc. v. Autodata Solutions, Inc.*, 2016 WL 5112061, at *2 (Del. Ch. Sept. 21, 2016) (alteration in original) (quoting Supr. Ct. R. 42(b)(ii)).
[4] Supr. Ct. R. 42(b)(i).

3

interlocutory review is in the interests of justice."[5]  Moreover, "[i]f the balance is uncertain, the trial court should refuse to certify the interlocutory appeal."[6]

Supreme Court Rule 42 establishes eight factors to be considered in conducting this balancing test.[7]  NCM argues that two of those factors support certification.  Specifically, it suggests that my bench ruling involves an issue of first impression in this state, and that interlocutory review may serve considerations of justice.  In my view, neither factor supports certification.

First, my bench ruling does not "involve[] a question of law resolved for the first time in this State."[8]  Indeed, our Supreme Court held in *Hallett v. Carnet Holding Corp.* that "a trial court retains the jurisdiction and authority to enforce, *modify*, or terminate any confidentiality order it has entered."[9]  While *Hallett* did not provide a standard for evaluating requests to modify confidentiality orders, it cited

---

[5] Supr. Ct. R. 42(b)(iii).
[6] *Id.*
[7] *See id.* ("(A) The interlocutory order involves a question of law resolved for the first time in this State; (B) The decisions of the trial courts are conflicting upon the question of law; (C) The question of law relates to the constitutionality, construction, or application of a statute of this State, which has not been, but should be, settled by this Court in advance of an appeal from a final order; (D) The interlocutory order has sustained the controverted jurisdiction of the trial court; (E) The interlocutory order has reversed or set aside a prior decision of the trial court, a jury, or an administrative agency from which an appeal was taken to the trial court which had decided a significant issue and a review of the interlocutory order may terminate the litigation, substantially reduce further litigation, or otherwise serve considerations of justice; (F) The interlocutory order has vacated or opened a judgment of the trial court; (G) Review of the interlocutory order may terminate the litigation; or (H) Review of the interlocutory order may serve considerations of justice.").
[8] Supr. Ct. R. 42(b)(iii)(A).
[9] 809 A.2d 1159, 1162 (Del. 2002) (emphasis added).

4

with approval *Wolhar v. General Motors Corp.*, which set out a framework for analyzing such requests.[10] In *Wolhar,* the Court "balance[d] the . . . proposed modification of the protective order against GM's reliance upon the order to determine whether such a modification would prejudice substantial rights of GM."[11] NCM itself urged me to apply the balancing test established in *Wolhar*. That test is more favorable to modification (and thus to NCM) than the one advanced by LVI and NorthStar, which requires a showing of "extraordinary circumstances" or "compelling need."[12] This more stringent standard is set out in caselaw of the Second Circuit, and has not been articulated in Delaware. NCM has not pointed to any Delaware authority supporting a standard that differs from the one adopted by *Wolhar*. Thus, my bench ruling does not involve a novel issue of Delaware law.[13]

NCM also argues that I misapplied the *Wolhar* test by ignoring its most important component: the need to show that the party opposing modification would suffer substantial prejudice from the sought-after modification. This argument lacks merit. While I did not use the word "prejudice" in my bench ruling, I gave great weight to LVI and NorthStar's representations that "they tailored their approach to

---

[10] 712 A.2d 464, 469 (Del. Super. Ct. 1997).

[11] *Id.*

[12] *See id.* ("The Court of Appeals for the Second Circuit follows a stringent standard which allows modification only in extraordinary circumstances or when a compelling need can be shown.").

[13] I recognize that during oral argument, I suggested that NCM's position raised "an issue of first impression." June 23, 2017 Oral Arg. Tr. 37:22. I now believe that assertion to have been mistaken.

discovery in reliance on the protective order's assurance that they would not have to face the burden and expense of litigation outside of Delaware."[14] The import of this language is clear: LVI and NorthStar would suffer significant prejudice if I declined to enforce an agreed-upon protective order that ensured neither party would have to bear the cost of litigating related claims outside of Delaware.[15]

Nor am I convinced that an interlocutory appeal would be in the interests of justice. NCM argues that if it "is required to wait until final judgment to appeal, that appeal may not conclude until after the Illinois limitations period runs, thus depriving NCM of its right to appeal."[16] In other words, even if NCM is successful in appealing my bench ruling after final judgment is entered, reversal may come too late to allow NCM to file a timely lawsuit against Simmons and Hogan in Illinois. This is not a frivolous issue. The underlying concern is that the protective order will operate as a *de facto* release for these supposed wrongdoers, a result that NCM says no party could have intended. But, as I indicated in my bench ruling, "when NCM agreed to th[e] protective order, it was entirely foreseeable that it may uncover information through discovery that would implicate certain individuals in the fraud allegedly perpetrated by LVI."[17] Indeed, while NCM's original and amended

---

[14] Nov. 1, 2017 Bench Ruling Tr. 12:17–20.

[15] Though NCM now claims that the need to show substantial prejudice is the most important part of the *Wolhar* test, it did not call attention to that aspect of *Wolhar* in its briefing or at oral argument.

[16] Application for Certification of Interlocutory Order ¶ 19.

[17] Nov. 1, 2017 Bench Ruling Tr. 11:20–24.

Counterclaims do not name Simmons and Hogan as Defendants, they do allege that these individuals helped LVI commit fraud. And, according to NCM, Simmons and Hogan are now the only persons who would receive a *de facto* release of liability from enforcement of the protective order. NCM should have been aware of the possibility that it would, or might, wish to sue Simmons and Hogan at the time it agreed to the order. Considerations of justice, therefore, do not support interlocutory review of my bench ruling.[18]

For the foregoing reasons, NCM's application for certification of interlocutory appeal is denied. An appropriate form of order is attached.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

---

[18] *See Rich v. Fuqi Int'l, Inc.*, 2012 WL 5392162, at *6 (Del. Ch. Nov. 5, 2012) (holding that interlocutory review would not "serve the interests of justice" "[b]ecause Fuqi has created the very predicament it now finds itself in").

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| LVI GROUP INVESTMENTS, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 12067-VCG |
| | : | |
| NCM GROUP HOLDINGS, LLC, SUBHAS KHARA, EVERGREEN PACIFIC PARTNERS, L.P., EVERGREEN PACIFIC PARTNERS GP, LLC, EVERGREEN PACIFIC PARTNERS II, L.P., EVERGREEN PACIFIC PARTNERS II GP, L.P., EVERGREEN PACIFIC PARTNERS II GP, LLC, EVERGREEN PACIFIC PARTNERS MANAGEMENT COMPANY, INC., TIMOTHY BRILLON, MICHAEL NIBARGER, and TIMOTHY BERNARDEZ, | : : : : : : : : : : : : | |
| | : | |
| Defendants. | : | |
| | : | |
| NCM GROUP HOLDINGS, LLC., | : | |
| | : | |
| Counter-Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LVI GROUP INVESTMENTS, LLC, SCOTT STATE, PAUL CUTRONE, and NORTHSTAR GROUP HOLDINGS, LLC, | : : : : | |
| | : | |
| Counter-Defendants. | : | |

<u>ORDER DENYING LEAVE TO APPEAL<br>FROM INTERLOCUTORY ORDER</u>

8

AND NOW, this 4th day of December, 2017, the Counter-Plaintiff having made application under Rule 42 of the Supreme Court for an order certifying an appeal from the interlocutory order of this Court, dated November 1, 2017, and the Court having found that such order lacks a substantial issue of material importance that merits appellate review before a final judgment and that the none of the criteria of Supreme Court Rule 42(b)(iii) apply;

IT IS ORDERED that certification to the Supreme Court of the State of Delaware for disposition in accordance with Rule 42 of that Court is DENIED.

/s/ Sam Glasscock III

Vice Chancellor